HILLBORN et al. v. HALE & KILBURN MANUF'G CO.

(Circuit Court of Appeals, Third Circuit. September 26, 1895.)

No. 6.

1. PATENTS—VALIDITY OF CLAIMS—EFFECT OF REJECTIONS AND CHANGES.

The fact that numerous changes in phraseology were made in the claims, from time to time, to suit the views of the examiner, and to distinguish the claims from those contained in prior applications, is no ground for defeating the patent, where the claims remained throughout the proceedings substantially the same, and were at no time inconsistent with those finally granted.

2. SAME—DISCLAIMER.

Where the patentee has admitted, by a disclaimer, that there were prior patents exhibiting structures having certain features found in his invention, the fact that, in a suit for infringement, defendants do not put in evidence any such prior structures, gives no weight to a suggestion that the admission was inadvertently made, for such admission might well be regarded by defendants as dispensing with evidence in that respect.

3. SAME—ANTICIPATION—INVENTION—MECHANICAL SKILL.

Invention *held* to exist, notwithstanding certain alleged anticipating devices, where the court was of opinion that there was no such obvious similarity that the one would, of itself, suggest the other to an ordinary mechanic.

4. SAME.
    Where two structures belong to totally distinct departments of invention,—to practical arts that have no connection with or similarity to each other,—the subsequent inventor is not precluded from using well-known mechanical contrivances or devices, that have already become the common property of manufacturers.

5. SAME—FOLDING BEDS.
    The Hale patent, No. 409,606, for an improvement in folding beds, *held* valid and infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Letters patent of the United States, No. 409,606, issued to Henry S. Hale on August 20, 1889, for an improvement in folding bedsteads. The entire title and interest in said letters patent, and in the invention therein described, were on January 15, 1891, by an instrument duly executed and recorded, sold and assigned by Hale to the Hale & Kilburn Manufacturing Company, a corporation of the state of Pennsylvania. On May 8, 1891, at the April term of the circuit court of the United States for the Eastern district of Pennsylvania, the said company filed a bill of complaint against Amos Hillborn, Samuel S. Ash, Josiah G. Williams, and John Hillborn, doing business as partners, under the name of A. Hillborn & Co.; charging them with an infringement of the rights of the complainant, as owner of the said patented invention, and praying for the usual relief. An answer and replication followed, and the case was so proceeded in that on May 27, 1892, a decree was entered granting the prayers of the bill, appointing a master to take an account, and enjoining the defendants from any further use, construction, or sale of the patented improvement; and on December 13, 1893, on the coming in and confirmation of the master's report, a final decree was entered, whereby the defendants were adjudged and decreed to pay the sum of $140 as damages, and the costs of the suit. An appeal was taken to the circuit court of appeals for the Third circuit.

L. L. Bond, for appellants.

E. H. Hunter, for appellee.

Before SHIRAS, Circuit Justice, and ACHESON and DALLAS, Circuit Judges.

SHIRAS, Circuit Justice (after stating the facts as above). Henry S. Hale filed an application February 6, 1880, for letters patent for an improvement in folding bedsteads. The specification contained two claims, the first of which was allowed, and the second was rejected, on a reference to Kauffman's patent, No. 159,682, dated February 9, 1875, for a hinge. An interference was declared between Hale and A. B. Stevens. The application of the latter had been filed December 21, 1878. This interference resulted in Hale's favor, and calls for no attention. On September 8, 1884, the original specification, with its allowed claim, was canceled, and a new specification, with six claims, was filed; and on October 15, 1884, these six claims were renewed, in an amended form, accompanied by a new oath of invention. On December 5, 1884, the first claim, which was the original first claim, was again rejected; and reference was made again to the Kauffman patent, and to patent No. 151,020 (May 19, 1874), granted to Harrison & Heyman. The remaining five claims were also rejected, and reference was made to patents to Harrison & Heyman and to patent No. 158,384 (January 5, 1875), to M. S. McSwain. Several amendments were made to meet the objections,

and references made in the patent office; and finally, on August 5, 1889, the amended application of February 6, 1880, was allowed, and on August 20, 1889, letters patent were granted.    It should also be mentioned that, while these proceedings were taking place in the patent office, Hale had been carrying on a contest with F. B. Williams under an interference declared between Hale's application and that of Williams.    This contest was decided in Hale's favor on July 1, 1889.

The first matter pressed upon our attention by the learned counsel for the appellants is based on the numerous changes in his claims made by Hale during the progress of his application through the patent office.    It is argued that the submission of the applicant to such repeated rejection upon references, and the consequent cancellation of his claims, render the patent absolutely invalid, as no distinction can be taken between the rejected and canceled claims and those finally allowed.    To sustain this contention the following decisions of the supreme court are cited:    Royer v. Coupe, 146 U. S. 524, 13 Sup. Ct. 166; Knapp v. Morss, 150 U. S. 224, 14 Sup. Ct. 81; Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 40, 14 Sup. Ct. 28; Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 14 Sup. Ct. 627.    Undoubtedly, these cases do establish the proposition that when an applicant acquiesces in the rejection of some claims, and accepts a patent for others, the claims allowed must be read and interpreted with reference to those rejected, and cannot be construed so as to cover either what was rejected by the patent office, or disclosed by prior devices; that where a patentee, on the rejection of his application, inserts in his specification, in consequence, limitations and restrictions, for the purpose of obtaining his patent, he cannot, after he has obtained it, claim that it shall be construed as it would have been construed if such limitations and restrictions were not contained in it.    But we are unable to see that these principles are applicable to the case before us.    It may well be that a patentee cannot be permitted to hold under his patent anything that he has clearly renounced and excluded from his inventions during the prosecution of his application.    But surely it has never been held that mere changes of phraseology to suit the views of the examiner, and to distinguish the claims made from those contained in prior applications, to which reference has been made, can be held to defeat the patent, when granted.    What is forbidden is the attempt, after a patent has been procured, surrendering or disavowing substantial claims or devices, to recover such renounced and abandoned claims by demanding a broad construction of those allowed.    Our examination of the various changes and cancellations made in the present case has not shown us any such radical or important changes as to bring this patent under the condemnation of the cited cases.    From the first to the last, as we read the history of the case, the claims (excepting the original second claim, which was wholly abandoned), while changed in number and in formal terms, were substantially the same, and at no time inconsistent with those finally granted.    Many of the objections from time to time taken seem to us to have been trivial and unimportant.    At any rate, we are not able to say that

this patent, if found to be otherwise valid, must be overthrown because of verbal changes made to meet those objections.

It is next contended that the court erred in holding that each and all of the claims of complainant's patent were good and valid claims. We incline to think that some of the claims cannot be sustained, if they are to be understood as claiming more than is contained in the 1st, 4th, 6th, 8th, and 9th claims. We do not, however, so understand them. They are simply redundant, and may be dismissed from consideration.

The next contention is the alleged want of novelty in the Hale invention. This part of the controversy will turn mainly on the effect that should be given to the Dutton patent (April 7, 1868), No. 76,423; to the Kauffman patent (February 9, 1875), No. 159,682; and to the first Hale patent (December 10, 1878), No. 210,777. Several other patents were referred to and discussed in the briefs, but, if the patent in question can stand the test suggested by the patents just specified, it will scarcely be necessary to consider each and all of the others. Hale concedes that his invention is merely an improvement in folding bedsteads, and relates to that "class of bedsteads which have a stationary supporting frame and a folding or swinging frame connected thereto, by means of interposed fulcra, in such manner that the folding member or frame can be placed in a substantially horizontal position, and can also be folded up into a substantially vertical position"; and he admits, in his disclaimer, that he is aware that "a number of prior patents show folding beds in which the folding or swinging sections and the stationary supporting sections are connected with each other by movable pivots, one on either side of the bed, the construction and arrangement of the parts being such that as the swinging part is being folded from a horizontal to a vertical position the pivots move towards the headboard, and also move upward; and hence I do not herein claim such construction." Accordingly, we find in the Dutton patent a fixed frame, a folding frame, and connecting devices, consisting of curved bars and straps, which operate so that the bedstead is raised and lowered from or on a variable or shifting fulcrum, and the headboard is made quite heavy, or has a weight attached, to serve as a counterpoise. In the Hale patent of 1878 we find a folding bedstead, with a permanent and a movable frame, pivoted to each other by means of a shaft or pins adapted to a slot or slots in one or other of the frames, in combination with rollers carried by the movable frame, and adapted to rails on the permanent frame. This construction has no combination or device which moves the movable frame backward or rearwardly as it ascends when the bed is being closed. The operation of the Dutton bed is the opposite to the operation of the patent in suit; that is, the movable part of the bed, in being folded, descends and moves forward, or away from the rear of the stationary part. It is true that there are two racks, one of which is secured to the stationary part, and the other to the movable part; but they do not themselves constitute the fulcra and fulcra seats by which the weight of the movable part is sustained by the stationary part, nor do they perform the functions claimed in the patent in suit, namely, the rising

and moving backward of the movable part upon folding it into the stationary part. In the Hale patent of 1878 we again find a movable and fixed frame, but the movements and theory of the mechanism are altogether different from those described in the Hale patent of 1889. There are no cogged racks, nor fulcra and fulcra seats. It has no means for causing the movable part to be simultaneously moved vertically and rearwardly, and therefore does not disclose the specific features of claims 4 and 6 in the patent in suit. In short, we do not find in either the Dutton patent or the Hale patent of 1878 a structure having a stationary and a movable frame, in which, while being closed or folded, the movable part is bodily raised and moved backward, by means of fulcra seats upon the stationary frame and a series of independent fulcra upon the movable part, so that the counterbalanced end of the movable frame clears the floor, and a portion of the counterbalance weight is located, when the frame is in a vertical position, partly in front of the pivot line. It is doubtless true that Hale admitted in his disclaimer that there were prior patents exhibiting structures in which, when in the process of folding from a horizontal to a vertical position, the pivots move towards the headboard, and also move upward, and that, as argued by the learned counsel for the appellant, Hale must be held to such disclaimer, notwithstanding the fact that the defense has failed to put any such structure in evidence. We cannot adopt the suggestion of plaintiff's expert, that this concession was inadvertent on the part of the patentee or of his attorney. Such an admission might well be understood by the defendants to dispense with evidence in that respect. But, while Hale is thus estopped from claiming such a compound movement, his admission does not forbid him from claiming, as new, devices intended to cause such movement.

It is further contended that Hale did not change or modify, in the patent in suit, any of the devices or parts contained in his prior patent of 1878, but only substituted for the pivots described in the 1878 patent the rack and pinion hinges of the Kauffman patent. By such substitution, it is argued, no invention was manifested, but only the exercise of ordinary mechanical skill; that the differences between the Hale and the Kauffman patent, in respect to the machinery connecting the two frames, arise merely from change of position. Considered simply as pieces of mechanism, separated from the structure with which they are intended to be combined, the Kauffman and Hale hinges have a superficial resemblance; but, when carefully compared, material differences are found, as well in the special devices employed, and in their mode of operation, as in the purpose or end sought to be accomplished. Thus, while it is true that the patent in suit has the same number of cogs in the pinion that the Kauffman has, and the same number of teeth in the corresponding plate, yet in the Hale structure the arm by which the pinion is secured to the movable part is directed away from the teeth of the pinion, while in the Kauffman the teeth of the pinion are directed towards the arm. Another and more important difference is that the extension from the pinion which supports the movable part in the Hale device must be capable of turning, so that when the pinion is at each end of the

slot it stands at an oblique angle to the slot or length of the plate containing the rack; but in the Kauffman it stands either parallel with the slot, and so as to close it, or at right angles thereto.    If the arrangement or adjustment of the parts used in the Hale structure was applied to the Kauffman structure, which is intended for a door hinge, the door could not be opened, and the device would not operate.    The argument that these differences could be overcome by a mechanic of ordinary skill, without calling for any exercise of the inventive faculty, is the one always resorted to in cases like the present.    The task of distinguishing between invention and the power of adaptation possessed by a skillful mechanic is not always an easy one, nor have the courts apparently succeeded in formulating a proposition to cover all cases.    While the statutes require that a patent, to be valid, must disclose invention and novelty, yet the degree or amount of invention required is not prescribed, and, from the nature of the case, cannot be.    We content ourselves, in the present case, by expressing our opinion that the mechanical contrivances found in those two patents are not so obviously similar that the one would, of itself, suggest the other to an ordinary mechanic.    It must further be observed that the purposes or aims of the two structures are wholly different.    The Kauffman device is for a door hinge, which is so constructed as to cause the door to open and close in an ellipse, and thus the molding of the door at the axial end does not strike the frame or support.    The object of the Hale invention, already sufficiently described, is for connecting the movable and fixed frames of a folding bed.    Well-known cases are cited on behalf of the defendants, in which it has been held that the application of an old process or machine to a similar or analogous subject, with no change in the manner of application, and no result substantially distinct in its nature, will not sustain a patent, even if the new form of result has not before been contemplated.    Without dissenting in the least from this doctrine, we do not regard it as applicable to the present case.    It has never been held that where the structures compared belong to totally distinct departments of invention,—to practical arts that have no connection with or similarity to each other,— the subsequent inventor is precluded from using well-known mechanical contrivances or devices that have become the common stock of manufacturers.    Such a view would, in the mechanical arts, restrict the operation of the patent statutes to the first and most striking efforts of invention, and leave no field open for the exercise of the inventive power in devising the numerous less conspicuous machines and apparatus that do so much to promote the convenience and comfort of daily life.    These views render it unnecessary to consider whether the patent in suit could be sustained as a mere combination of old and well-known devices.

We are now brought to the question of infringement, and here we meet the argument that the patent in suit must, in order to be sustained, receive a strict or narrow construction, and that such a construction will not bring the defendants' folding bed within its reach. Undoubtedly, the patent in suit, having been preceded by numerous other patents for folding beds, calls for a narrower construction than

if Hale had been a pioneer in the art. Nevertheless, we think that, in any point of view, if the Hale patent be sustainable, the form of bed made and used by the defendants must be deemed an infringement. The defendants' expert concedes that in the Hillborn bed there is a stationary part attached to the stationary frame of the bed, having a series of teeth or fulcra adapted to successively engage the teeth or fulcra seats upon the stationary part, thereby causing the movable member to rise and move inward, and towards the back of the bed, when it is folded up, and that when the movable frame is folded into an upright position the counterbalancing weight lies below the pivot upon which the movable frame is supported, part of the weight lying in front, and part in the rear, of the pivotal line. An examination of the description of the Hillborn bed shows that the racks form a toothed, hinging mechanism, interposed between the swinging frame and its support, which rests upon the floor, and that these toothed devices constitute a series of fulcra or pivotal supports arranged in inclined positions, extending forward, so that part of them are nearer the rear wall or back of the bed than others are; the arrangement of parts being such that as the bed is let down, or unfolded for use, the commencement of such movement results in successively shifting its fulcrum, or the points of its pivotal support, further forward, whereby the leverage of the counterbalancing weight is increased, and is therefore made more effective in supporting the weight of the footboard and bedding. In this description are found every essential feature, both in construction and method of operation, of the patent in suit.

A further argument is based on the cases of Railway Co. v. Sayles, 97 U. S. 563; Clements v. Apparatus Co., 109 U. S. 649, 3 Sup. Ct. 525; and Electric Gaslighting Co. v. Boston Electric Co., 139 U. S. 502, 11 Sup. Ct. 586,—where it was ruled that in cases of reissue an enlargement of the claims could not avail against patents granted, or articles made and sold, between the time of the original application and the time of the final granting of the reissued patent. We think this contention is sufficiently disposed of by saying that the present is not a case of reissue containing new and different claims, and that, at any rate, we fail to perceive that Hale departed in any substantial particular from his application as first made.

It is claimed that as the death of Amos Hillborn, one of the defendants, was suggested on the 8th day of February, 1892,—two days after the record was closed,—and no action was taken upon such suggestion, and the bill was not dismissed, as to him or his estate, until the coming in of the interlocutory decree, May 27, 1892, so much of the costs as would have been due and payable by Amos Hillborn should not have been included in the decree. As the defendants were partners, and as the defense and its expenses were not affected or increased by the death of one, we are unable to see why the costs are not properly chargeable against the surviving partners. At all events, the question does not appear to have been raised in the court below, and we do not feel compelled to now consider it. The decree of the circuit court is affirmed.