THOMPSON v. SECOND AVE. TRACTION CO. et al.

(Circuit Court of Appeals, Third Circuit. May 1, 1899.)

No. 32, March Term.

1. PATENTS—INFRINGEMENT—ROLLER COASTERS.
   A patent for a roller-coasting structure, claiming tracks "running parallel with each other, and having the starting and terminal stations at the same elevation," is infringed by a similar structure in which the terminal station is only from six inches to a foot lower than the starting station.

2. SAME—MECHANICAL EQUIVALENTS.
   In a roller-coasting structure, having parallel tracks, the use of turntables or pivoted switch tracks, instead of fixed switch tracks, does not avoid infringement, since these devices are well-known equivalents.

3. SAME.
   The Thompson patent, No. 310,966, for an improved roller-coasting structure, construed, and *held* valid, and infringed as to claim 1.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

This was a suit in equity by La Marcus A. Thompson against the Second Avenue Traction Company and James A. Griffiths for alleged infringement of a patent for a roller-coasting structure. The circuit court found that there was no infringement, and entered a decree dismissing the bill (89 Fed. 321), from which decree the complainant has appealed.

Frank S. Busser, for appellant.

Henry E. Everding, for appellees.

Before ACHESON and DALLAS, Circuit Judges, and McPHERSON, District Judge.

ACHESON, Circuit Judge. The bill in this case charges the defendants, the Second Avenue Traction Company and James A. Griffiths, with infringement of letters patent No. 310,966, granted on January 20, 1885, to the complainant, La Marcus A. Thompson. The invention of this patent relates to an improved roller-coasting structure. The specification describes, and the drawings illustrate, a structure in which there are two parallel undulating tracks, extending from an elevated starting station at one end of the structure to a terminal station having the same elevation at the other end of the structure, each end of the structure being provided with a switch track, by means of which the car may be transferred from one track to the other, the object being to have each car make a round trip, "going out on one track and returning on the other." The specification, referring to the attached drawings, states:

"The starting end, D, of the outgoing track, B, is of a gradual decline to b, where the track takes a short rise, which, however, is not steep enough to materially check the momentum gained by the car from the start. From this point the track takes quite a sudden or steep descent to the lowest part, d, and then a gradual and regular rise to the terminal point. The momentum or acceleration acquired on the down grade will carry the car nearly to the top of the ascending end, means being provided to continue the car to the top when its collected force has been expended. The car is then transferred to

the return or companion track, B', by means of the switch track, E, and when it has returned to the starting point it is switched onto the outgoing track by means of the switch, F. The two tracks run parallel, and are duplicates of each other, the structure and grades being the same at opposite ends. * * * This construction and arrangement afford a very enjoyable means for amusement and pleasure, the sensation being similar to that of coasting on the snow, with the difference that the conveyance runs on wheels, and returns the passenger to the starting point without the necessity of having to walk up hill for a second ride."

Infringement of the first claim of the patent is here alleged. That claim reads thus:

"(1) In a coasting structure, the combination, with the tracks, B, B', running parallel with each other and having the starting and terminal stations at the same elevation, of the switch tracks, E, F, whereby the car reaching the terminus on the outgoing track is transferred to the return track and back again to the first track for another trip, substantially as described."

Upon the uncontradicted proofs, it is quite clear that the defendants' roller-coasting structure at Calhoun Park, the subject of complaint here, in form of construction, mode of operation, and purpose, conforms closely to the specification and drawings of the patent in suit. Indeed, to take their structure out of the first claim, the defendants rely exclusively on two alleged differences. They assert— First, that the starting and terminal stations of their structure are not at the same elevation; and, second, that their switching devices are turntables or pivoted switch tracks, whereas the switching devices shown in the patent in suit are fixed switch tracks.

In respect to station elevation, the defendants' allegation is that their starting station is one foot higher than their terminal station. This is the entire alleged difference in the height of the starting and terminal stations in a structure having a length of 450 feet and an altitude at the ends of about 21 feet. The complainant alleges, and his proofs show, that the defendants' starting and terminal stations do not vary in elevation more than five or six inches. Here the weight of the evidence, we think, is with the complainant. Certain it is that no difference in elevation between the starting and terminal stations of the defendants' structure is discernible by the eye, and whatever difference exists is ascertainable only by the nicest measurement. Now, we are not able to read the first claim of this patent as requiring that the starting and terminal stations shall be exactly at the same elevation. Mathematical precision is not necessary and is not prescribed. It suffices if the stations are substantially at the same height. This accomplishes practical success. The claim has the usual conclusion, "substantially as described." Without these qualifying words, however, the claim is to receive a reasonable construction, regard being had to the nature of the described structure and the object to be attained. The defendants' structure has the starting and terminal stations at the same elevation for all practical purposes. This is enough. The slight actual difference in elevation is a matter of no moment.

It is undeniable, under the evidence, that at the date of the complainant's patent both the switch tracks illustrated in his drawings and the defendants' switch tracks were old and familiar devices for transferring cars from one track to another. They were well-known

equivalents. Here they perform the same function. The substitution of one for the other in this combination works no new or different result whatever. The first claim of the patent does not name "fixed" switch tracks. The change in the mere form of the switching device which the defendants have adopted is altogether immaterial. The changed form embodies the invention described and claimed. Winans v. Denmead, 15 How. 330, 342. There is substantial identity between these two coasting structures. In this class of cases, we have repeatedly held that such mere formal changes are unavailing to avoid infringement. Devlin v. Paynter, 28 U. S. App. 115, 122, 12 C. C. A. 188, and 64 Fed. 398; Hillborn v. Manufacturing Co., 28 U. S. App. 525, 557, 16 C. C. A. 569, and 69 Fed. 958; McDowell v. Kurtz, 39 U. S. App. 353, 23 C. C. A. 119, and 77 Fed. 206.

We are not able to concur in the view which prevailed in the court below that, unless the first claim of the patent in suit is construed so narrowly as to exclude the defendants' structure, then the claim must be held to have been anticipated by the patent to John G. Taylor, No. 128,674, and therefore void. A careful study of these two patents has convinced us that they relate to structures which differ substantially in form, method of action, and result. The Taylor patent shows an inclined railway consisting of two combined tracks, which tracks, respectively, start from different levels, and run in reverse directions; the car, in making its trip, starting from a high platform at the beginning of the railway, and finally stopping at a very much lower platform at the end of the railway. When the car starts it proceeds down the first inclined track, and onto an intermediate transfer platform, where, by means of a movable frame, it is moved sidewise, so as to come opposite the second inclined track, and, being again started, passes down that incline, and onto the stopping platform, where the passengers alight at a point remote from the starting platform. The car is then pushed or pulled up a steep incline to another or fourth platform, and then, being moved sidewise, is placed again on the starting platform for another trip. In order to take another ride, the passengers have again to walk up the steps leading from the ground to the most elevated platform. The Taylor structure does not possess the distinguishing features which have brought the Thompson roller-coasting structure into great public favor and extensive use, namely, the capability of securing a round trip,—each car going out on one track and returning on the other track,—and bringing back the passengers to the starting point, without the necessity of their walking uphill or climbing a flight of steps for a second trip. The views we have thus expressed require a reversal of the decree dismissing the bill. The decree of the circuit court is reversed, and the cause is remanded to that court, with directions to enter a decree in favor of the complainant in the bill.