### VROOMAN et al. v. PENHOLLOW et al.

(Circuit Court of Appeals, Sixth Circuit. May 4, 1910.)

No. 2,013.

1. PATENTS (§ 172*)—SCOPE—RANK IN THE ART.

Whether an invention be a pioneer, or, being of small importance, is ranked at the foot of the line, the rule is that it shall be judged on its own merits; that is to say, according to the advance it has made in novelty and utility beyond the former art.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 247; Dec. Dig. § 172.*]

2. PATENTS (§ 178*)—INFRINGEMENT—SUBSTITUTION OF EQUIVALENTS.

The statutory requirement that an applicant for a patent shall explain the best mode in which he has contemplated applying the principle of his invention (Rev. St. § 4888 [U. S. Comp. St. 1901, p. 3383]), does not

---

preclude him from claiming any other mode which embodies his principle.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 254½; Dec. Dig. § 178.*]

3. PATENTS (§ 168*)—CONSTRUCTION AND SCOPE—LIMITATION BY PROCEEDINGS IN PATENT OFFICE.

It is of the essence of the rule whereby an inventor is estopped from claiming to the full of his invention as disclosed by his specification and claims in consequence of his concessions to meet the requirements of the Patent Office, and so obtain his patent, that the requirements which were conceded by him should concern the matter upon which the estoppel is raised, and whether the examiner states his objection, or contents himself with a reference, the estoppel does not extend to a matter not stated in the objection or disclosed by the reference.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 243½, 244; Dec. Dig. § 168.*]

4. PATENTS (§ 178*)—CONSTRUCTION AND SCOPE—EQUIVALENT FORMS OF DEVICE.

Where a claim of a patent contains a description of only one form of a thing which would perform the same office in other forms, the court will apply the general rule that the description covers all equivalent forms, and the form described will be treated only as the one preferred.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 254½;. Dec. Dig. § 178.*]

5. PATENTS (§§ 237, 328*)—CONSTRUCTION—INFRINGEMENT—ONION TOPPER.

The Vrooman & Vrooman patent, No. 580,742, for an onion topper, claim 5, which describes an inclined V-shaped trough having a longitudinal opening in the bottom directly above the space between two parallel rollers which engage and pull off the tops when they project through the opening, "by which trough the vegetables are held so that only their tops may engage the rollers," is not limited to a form of construction which does not expose the onions to contact with the rollers or either of them, and is infringed by a construction in which the onions come in contact, but not in engagement, with a portion of the surface of one of the rollers.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 237.*]

6. PATENTS (§§ 237, 328*)—CONSTRUCTION—INFRINGEMENT—VEGETABLE TOPPING MACHINE.

The Vrooman patent, No. 676,549, for a vegetable topping machine, claim 3, covering a machine having "a revoluble feeding cylinder. a revoluble bar presenting cutting edges, parallel to and in close proximity, to the perimeter of the cylinder, but of much smaller diameter," the vegetables being fed through the open bottom of a trough upon the upper surface of the cylinder, which carries them over to one side of the trough, by which they are held while the tops project through the space between such side and the cylinder, where they are caught and cut off by the cutting bar, is not limited with respect to the comparative diameters of the cutting bar and cylinder, which is merely a preferred form, and is infringed by a machine which differs only in that the cutting bar is of equal or greater diameter, which is an equivalent construction, operating on the same principle and within the invention.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 237.*]

7. PATENTS (§ 310*)—SUIT FOR INFRINGEMENT—MULTIFARIOUSNESS OF BILL.

A bill for the infringement of two patents is not multifarious, where one patent is merely for an improvement in one element of the combination of the other and both are infringed by the same machine.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 310.*]

---

*For other cases see same topic & §.NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8. APPEAL AND ERROR (§ 209*)—OBJECTIONS BELOW—FAILURE TO OBJECT—
EFFECT.
. The objection that the proofs in a suit for infringement do not sustain
the allegation of infringement as to one of the defendants cannot be
raised for the first time in the appellate court, where there is some evi-
dence to sustain the allegation.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1290–
1303 ; Dec. Dig. § 209.*]

9. PATENTS (§ 92*)—JOINT INVENTION.
The fact that one of two joint patentees of a combination was the first
to perceive the crude form of the elements and the possibility of their
adaptation and composition to accomplish a useful result is not sufficient
to overcome the presumption of joint invention arising from the granting
of the patent.
[Ed. Note.—For other cases, see Patents, Cent. Dig. § 124 ; Dec. Dig.
§ 92.*]

10. WORDS AND PHRASES—"ENGAGEMENT."
"Engagement," in its mechanical sense, means a seizure, a laying hold
of, an active prehension, and does not include mere contiguity.
[Ed. Note.—For other definitions, see Words and Phrases, vol. 3, p.
2394.]

Appeal from the Circuit Court of the United States for the North-
ern District of Ohio.

Suit in equity by Warren F. Vrooman and Arba E. Vrooman
against Grant S. Penhollow, Frank Penhollow, and Wallace L. Baker.
Decree for defendants, and complainants appeal. Reversed.

Obed C. Billman (A. M. Allen, of counsel), for appellants.

A. L. Lawrence, for appellees.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit
Judges.

SEVERENS, Circuit Judge. The bill in this cause complains of
the infringement of two patents, one granted April 19, 1897, to Vroo-
man & Vrooman, numbered 580,742, and the other to Arba Vrooman
(who was one of the patentees in the former patent), dated June 18,
1901, and numbered 676,549. The patentee assigned a one-half in-
terest in this patent to the other Vrooman. The patent of 1897 was
for an "onion topper." The patent of 1901 was for a "vegetable top-
ping machine." The machines, which were the subjects of these pat-
ents both related to the same art, and were designed to remove the
tops from onions and other vegetables of similar forms, and both
possessed similar characteristics.

The machine patented in 1897 was for a combination of elements,
and consisted of a long inclined trough supported by a frame and ex-
tending downward from the hopper containing the onions to the exit
where the onions were delivered topped. This trough was made of
two straight flaring sides, opening at the top and converging at the
bottom, in cross-section like the letter V. The lower edges did not
meet, but there was left a long slot along the whole length of the
trough through which the tops of the onions, as they rolled down the
trough, would pass out of the trough in such a manner that they

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

would be gripped and removed by the rollers next to be described. Below this trough and of the same length with it and running parallel therewith and secured on the same frame with the trough were located two parallel rollers placed quite close together and turning over toward each other when in operation. The space between the rollers was arranged in such near proximity to the slot at the bottom of the trough that the protruding tops of the onions would be engaged by the rollers and would be pinched and pulled off. The onions after being disengaged from their tops would go on to their destination. The minor details of construction are not now important. This machine was the first of its kind adapted to perform the work of topping vegetables. It is claimed by the inventors to have been a pioneer in the art. This claim is denied by the defendants, who insist that it was merely the extension of older inventions of machines intended for a like purpose and they instance threshing machines, machines for husking corn, and machines for stripping grains from their vines, as peas and beans. On account of the existence of such machines, the court below was moved to think that the Vrooman machine had no claim to be ranked as a pioneer, but, on the contrary, was one standing on narrow ground. In this the court seems to have followed the idea of the examiner in the Patent Office, where the patentees had much trouble from references to husking machines and the like. We must say, in passing, that the classification of such machines as are here referred to with an onion topping machine seems to us a rather distant call. For there are few points of resemblance. But it is not worth while to spend much time in fixing the rank or classification of the machine. Whether an invention be a pioneer, or, being of small importance, is ranked at the foot of the line, the rule is that each shall be judged on its own merits; that is to say, according to the advance it has made in novelty and utility beyond the former art. McSherry Mfg. Co. v. Dowagiac Mfg. Co., 101 Fed. 716, 41 C. C. A. 627; Penfield v. Chambers Bros. Co., 92 Fed. 639, 34 C. C. A. 579; Paper Bag Patent Case, 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122. And in its own peculiar field it is not upon this record to be denied that this invention of the Vroomans' was the first, and for that reason and because it has proved useful to the public should be dealt with as one standing at the head of its line and entitled to be protected accordingly. But assuming all this to be so, in the absence of further defense, it is still contended with confidence that the pretensions made for this invention by the Vroomans were shorn away by the proceedings on their application at the Patent Office, to the extent that the patent is narrowed to a combination of the specially described elements of claim 5, which is the one mainly relied upon by the complainant at the hearing in this court. Claim 5 reads as follows:

"In a machine for topping vegetables a frame having two parallel rollers engaging the tops to pull them from the vegetables, and a trough running over the rollers, the trough having a longitudinal opening in its lower portion leading directly to the space between the rollers by which trough the vegetables are held so that only their tops may engage the rollers, substantially as described."

In this connection, we exhibit Figs. 1 and 2 of the drawings:

Fig. 2 is a cross-section of Fig. 1 on the line 2, 2. In Fig. 2 it is seen that the onions rest in the trough, and the tops of the onions are presented vertically downward therefrom into the space between the rollers and are engaged by the latter in that position; while in Fig. 1 the onions are resting partly on roller 21, which is the right-hand roller in Fig. 2. The left-hand roller, 20 of Fig. 2, is not shown in Fig. 1. It could not be without impairing the view of roller 21. The significance of what is shown by Fig. 1 will appear later. The defendants contend that claim 5 is limited to a trough which performs the whole function of supporting the onions and delivering the onion tops to the rollers, with which the onion bulbs do not come in contact. This is a vital matter for the defendants. For the defendants' machine is substantially a facsimile of the complainants' in all other respects than this. A cross-section of it is shown by Fig. 2 of an exhibit which is admitted to be a correct representation:

One round roller is shown, 4. 12 is not round, but is a revolving bar with sharp plates set out from the corners. The sharp plates almost touch the opposite roller. Both roll over toward each other, and the onion top is detached in like manner as in Vroomans' 1897 patent, except that it is cut off instead of being pinched off. This may be an improvement; but it is only an improvement, taken from the Vrooman patent of 1901, as we shall presently see. It is also seen

from the above Fig. 2, just shown, that a part of the surface of the roller, 4, supplies the place of the bottom of the trough. The onions coming down the trough plates 6, 7, and on the roller, 4, protrude their tops through the open space between the roller, 4, and the lower edge of the plate, 7, and become engaged between the roller, 4, and the sharp-edged plates of 12 and are cut off. These conditions establish the necessity upon the defendants of showing that the complainants' patent of 1897 does not cover a form of construction in which the onions come in contact with the rollers. And to aid in this contention they urge that the word "engage," in the next to the last line of claim 5 of the patent, includes also the idea of "coming in contact." But this conclusion is refuted by several reasons. The words themselves are not synonymous. There may be contact without engagement which means in its mechanical sense a seizure, a laying hold of, an active prehension, and does not include mere contiguity. And in this patent the words are used to signify different things. In the following claim (6) the word "contact" is used to signify another meaning than the word "engage" in the fifth claim. Stress is laid upon the following paragraph in the specifications:

"It will be seen that the purpose of the trough is to prevent the rolls from engaging the onions. If the rolls engage the onions, the onions will be bruised and peeled, but by resting them in the trough the tops only are permitted to engage the rolls."

But we think this does not aid the argument. It is the engagement of the onions between the rollers which is here meant. It is that which would bruise and peel the onions, and not the being carried along on a smooth roller so as to protrude their tops and be turned over into the opening, that would be likely to bruise and peel them. They have the same treatment in the Vrooman machine of 1901 and in the defendants'; and there does not appear to have been any trouble on that score. The gist of the controversy over the infringement of this patent depends upon this contention as to whether the patentees are limited to a form of construction which does not expose the onions to contact with the rollers or either of them. It is important to observe, in this connection, what has already been shown, that one of the forms shown in the drawings discloses the onions resting on, in contact with, a portion of the surface of one of the rollers.

We turn next to see whether the proceedings in the Patent Office require this limitation. In 1895 the Vroomans filed a caveat on their invention in the Patent Office in which they described their invention with a drawing to illustrate the form in which they proposed to embody it. They described a trough with an opening at the bottom and a pair of rollers "adapted to engage the tops of onions or other vegetables, so as to pull the tops from the vegetables and deposit the said tops beneath the machine, while the vegetables themselves roll down and are delivered at the lower end of the machine." And they showed one form in which the bottom of the trough was wide and a roller supplied the bottom of the trough, and apparently conveyed the onions to one side for engaging the tops between the rollers. The application for the patent was filed the following year. We have already refer-

red to the drawings as illustrating the forms which their invention might take, namely, one in which the onions were held out of contact with the rollers, and another in which they were in contact with a limited part of the surface of one of the rollers and the cutting off of the tops was done after the onion tops passed out of one side at the bottom of the trough, and there is nothing in the specifications to indicate that the inventors intended to limit themselves to one of these forms which varied only in a matter of detail; the main purpose of the invention being present in both. On presentation of the application, original claim 5 was rejected by the examiner on reference to corn huskers and threshers. It was canceled, and a substitute was tendered in the following form:

"5. In a machine for topping vegetables, parallel topping rollers, a trough located over the said topping rollers and having an opening over the space between said rollers, and mechanism for driving the rollers, substantially as described."

And we start with this to see what limitations the examiner proposed. He said "claim 5 is rejected upon reference to Fig. 3 of Partelow." He did not specify what his reference was intended to develop. But on turning to Fig. 3 of the Partelow patent, which is in the record, we find it indicates two parallel converging rollers and the sides of an open-bottomed trough the lower edges of which are just above the tops of the respective rollers. There is nothing to prevent the ears of corn falling between the rollers and being engaged by them. Looking at substituted claim 5, we see that in this respect it was like Partelow's Fig. 3. It had no provision for keeping the onions from being engaged by the rollers. The object of the reference is thus readily perceived. Thereupon the applicant canceled this substitute, and proposed another, which was allowed, and stands as claim 5 in the patent. If Fig. 2 of this patent had been the only diagrammatic representation of the invention, and even if the specifications themselves had only indicated this form, the result would be the same. The inventor is required by the statute to point out the best mode in which he has contemplated the application of the principle of his invention. But this does not preclude him from claiming any other mode which embodies his principle. Mr. Walker, in his work on Patents (4th Ed. § 115), in commenting on this provision of the statute, says:

"The second provision cannot mean that every inventor must infallibly judge which of several forms of his machine will eventually be found to work best, for, if it means that, it requires what is often impossible; requires the inventor to foresee the ultimate effects of new and comparative untried causes."

This is elementary. It is the foundation of the doctrine concerning equivalents. The case of Winans v. Denmead, 15 How. 330, 14 L. Ed. 717, is a pertinent illustration. There the applicant had described his invention as being one of a body for a car and gave, as a form representing his invention, "the frustum of a cone," an inverted cone, and he assigned his reasons for adopting this form. He said that thereby "the force exerted by the weight of the load presses equally in all directions, and does not tend to change the form thereof, so that

every part resists its equal proportion," etc. Notwithstanding he had represented his invention in this form and assigned his reasons for it, the court held that he was not restricted to this form, and that his patent covered any other form constructed substantially upon the principle of his invention, and upon this ground further held that car bodies constructed upon his principle, but varying therefrom in that, instead of employing the circular form of a cone, the car bodies were built in an octagonal or quadrilateral form, evidently did not possess in like extent the peculiar advantages which the inventor had contemplated. We postpone further consideration of this subject until we have examined the Vrooman patent of 1901. The description of the invention for which that patent was granted is facilitated by reference to our description of the invention in the patent of 1897. The "vegetable topper" of the later patent was constructed on the same lines in general as those of the former patent. It was an improvement upon that, and the improvement consisted in this: Instead of employing two circular rollers, the inventor inserted in place of one of them a revolving square bar having comparatively sharp right angled corners. Both revolved in the same way as the rollers of the former patent, and the only difference worth noting is that, in place of the round surface of a roller, the corners of a revolving bar co-operated in detaching the tops of the onions. As in the former patent, provision was made for withholding the onions themselves from being engaged by the detaching apparatus. Fig. IV of the drawings, here inserted, shows all that is necessary for the present purpose:

Fig. IV

The onions come along down the trough, H and H'. The roller, G, carries them over and feeds the tops through the opening at the base of the side H' of the trough. The roller, G, and the bar, L, rolling over toward each other, gripe the tops of the onions and detach them.

Counsel for the parties devoted their attention to claim 3, and we will do likewise. It reads as follows:

"The combination in a machine for topping vegetables, of a revoluble feeding cylinder, a revoluble bar presenting cutting edges parallel to and in close proximity to the perimeter of the cylinder, but of much smaller diameter; said bar being provided with collars having a diameter nearly equal to the greatest diameter of said bar, and means, whereby the cylinder and cutter are caused to revolve toward each other."

The validity of this claim, so far as concerns the presence of invention, is not denied. The contention most vigorously pressed is that this claim was so dealt with in the Patent Office by the exaction of the examiner and the concessions of the patentee as to preclude the latter from claiming more for his patent than his original specification particularly described. The application the defendants make of the rule referred to in this case comes to this: That the patentee is restricted to a pair of rollers, one of which, the cutting roller, is of much smaller

diameter than the other. And they point to the fact that their cutting roller is as large as, if not larger, than the other. This is the ground on which they think they avoid the charge of infringement.

When Vrooman made his application for this patent, although the drawing (which is shown on a preceding page) showed a revolvable cutter bar of much smaller diameter than the other roller, the specifications themselves made no suggestion that it should be smaller and assigned no reason why it should be. Nor were the specifications changed in this regard during the pendency of the application. Nor did the original claim make any reference to the relative diameter of the rollers. Following claim 3 through the proceedings, we find that it was rejected on references to two patents to Rosenthal, one a threshing machine, the other a corn husker. There was nothing in the references which related to the relative sizes of the rollers. As the same references were made later on, we will postpone comment thereon to that place. The next occurrence was the presentation of an argument by the applicants' attorney against the relevancy of the references, above mentioned, to claim 3. The argument made no reference to any supposed requirement in respect to the diameter of the rollers, and, of course, no acceptance of a proposal on that subject. But the examiner again rejected claim 3 and other claims for reasons that seem trivial and inadequate, for they suggest nothing which a mechanic organizing the machine would not understand to be required, and would know how to provide for. But, at the close, the examiner says, "claims * * * 3 are rejected in view of the references of record," and particular reference is made to lines 45–48, page 3, of the specification on Rosenthal 621,505, and to lines 76–88, page 2, of 588,-184. In reference to his suggestion to "references of record," there had been no other references than those to Rosenthal which he repeats, as above stated. We must suppose that the "references of record" must have been some theretofore made in support of objections made to the other claims. As the object of the references is not disclosed, it is necessary to turn to the references themselves to find the point. The defendants have put in evidence the Rosenthal patent No. 621,-505 and we find therein at the place cited this language:

"The sharpened edge or point of the nippers then severs the stalks from the ears, and said stalks are carried between and below the rollers."

It is obvious that this has nothing to do with the comparative size of rollers. The other patent referred to, No. 588,184, is not found in the record, and we have no knowledge of its relevancy. If it contained anything profitable to defendants, we must suppose it would have been produced. On a later day the appellant amended all his claims, among them claim 3, but not in any respect involving the diameter of the rollers. Then followed the misadventure which the defendants think furnishes them a good defense. On the presentation of these amended claims, the examiner made reply (of which we quote so much as is relevant to claim 3):

"The wording of the claims is found to be faulty in several respects to be exemplified below; and while there is acknowledged to be patentable matter, the structural differences constituting the novelty are not expressed in the claims, notably the first and second.

"Claim 1 is somewhat inaccurate, as the cutter is expressly held out of contact with the cylinder. The claim does not formulate the complete operative device, and by no means distinguishes from Rosenthal, of record.

"The following revision is respectfully suggested:"

Then follow his suggestions about forming the claims. We need only to say that he advises forms for claims 1 and 2, in both of which the cutting roller is described as being "of much smaller diameter" than the other roller. He then proceeds to say:

"It is suggested that claim 3 be revised to read like suggested claim 1, excepting that before the words 'and means' there be inserted these words, 'said bar being provided with collars having a diameter equal to the greatest diameter of said bar.'"

And concludes by saying:

"It is thought that counsel for applicant will upon comparison of the original with the suggested claims see that the examiner has endeavored to preserve the intent of each, and has striven merely to relieve the claims of matter appropriate to, and already stated in the description, and to omit from them unnecessary limiting elements.

"In order to avoid confusion in view of former amendments the claims should be entirely rewritten."

The claims were all rewritten, and in every one of them the cutting bar was described as being "of much smaller diameter" than the other roller.

We will now take up the subject we postponed when we met these references at the former place. We have been at pains to develop the facts upon which the question arises, whether claim 3 is limited in respect to the diameter of the cutting roller when compared with the diameter of the other roller so as to exclude a form of cutting roller of equal or larger diameter than that of the other roller. At the hearing we were much impressed by what appeared to be a concession of the patentee to a requirement of the examiner, for we assumed that the references made by the examiner in support of his objection concerned the subject here in controversy. But it now appears that this was not the matter which the examiner had in mind, and that there was no concession on the part of the patentee unless it was made by adopting the form of claim suggested by the examiner. It is of the essence of the rule whereby the inventor is estopped from claiming to the full of his invention as disclosed by his specifications and claims in consequence of his concessions to meet the requirements of the Patent Office and so obtain his patent, that the requirements which were conceded by him should concern the matter upon which the estoppel is raised. The estoppel must rest upon a definite basis. If the examiner discloses his objection, we can see what it is, and know the consequence of a concession to it. If he does not do this, and contents himself with a reference, we look to the matter referred to, to ascertain his meaning. Either in the one way or the other the examiner must point out what his objection means. If his objection is not put upon the ground whereon the patentee is alleged to be estopped, it is obvious that the concession made to meet it would be a concession only of an entirely irrelevant matter. Mr. Justice Shiras, in delivering

the opinion of the Third Circuit Court of Appeals in Hillbone v. Hale, etc., Mfg. Co., 69 Fed. 958, 960, 16 C. C. A. 569, 571, said:

"It may well be that a patentee cannot be permitted to hold under his patent anything that he has clearly renounced and excluded from his inventions during the prosecution of his application. But surely it has never been held that mere changes of phraseology to suit the views of the examiner, and to distinguish the claims made from those contained in prior applications, to which reference has been made, can be held to defeat the patent, when granted. What is forbidden is the attempt, after a patent has been procured, surrendering or disavowing substantial claims or devices, to recover such renounced and abandoned claims by demanding a broad construction of those allowed."

A more definite and concrete statement of the principle was made by Judge Sanborn in delivering the opinion of the Eighth Circuit Court of Appeals in the case of J. L. Owens Co. v. Twin City Separator Co., 168 Fed. 259, 93 C. C. A. 561, where he said:

"If a patentee acquiesces in the rejection of his claim on reference, he may be estopped to maintain that an amended claim covers the combinations shown in those references, or that it has the breadth of the rejected claim, but he is not estopped from claiming and securing by the amended claim every improvement and combination which he has invented and which was not disclosed by those references."

We think this is a perfectly correct statement of the law, and would be equally so of a case where the objection is stated by the examiner without references and the objection is seen to have been leveled at another matter than that involved in the alleged estoppel. It is hardly to be believed that the examiner himself intended to cut off all other forms than such as should comply literally with the words of the claim. He had already pointed out to the applicants' attorney, as a ground for supporting another objection to words employed in describing the plates on the cutting roller as having "corners" and "projections," that they were mechanical equivalents, and that one of the words was sufficient, because, he said, "it is a well-settled principle in patent law that a claim for a mechanical device covers all obvious mechanical equivalents," and, quoting from Reid v. Roebuck, a decision of the Patent Office, "As an inventor is always entitled to equivalents, their introduction in a claim is an unnecessary intrusion." It seems probable that in suggesting these claims he took his cue from the drawing which showed the cutting roller as much smaller in diameter than the other roller. There is nothing to justify the belief that either the examiner or the applicant intended that the patent should be restricted to the forms described in the claim and have no range of equivalents. It was not a limitation which inhered in the invention, and it would expose his patent to such mere subterfuge as increasing the size of an element without any change in the mode of operation. But coming to the legal effect of these proceedings, we think the same result follows. The inventor on making his application is, as we pointed out in dealing with the patent of 1897, where the invention relates to machinery, bound to indicate his preferred form in which he would use it. He may amend his claims to promote that object, so long as he keeps within the bounds of his invention. His preferred form was to use a cutting roller having a much smaller di-

ameter than the other. His drawings showed such a form. He could have no objection to claiming his invention in that form, and he accordingly accepted the suggestion of the examiner. The examiner saw that this was the inventor's preferred form and recommended him to claim his invention in that form. We see nothing in these circumstances which would work a limitation any more than if he had originally so described his cutting roller. Suppose he had done so, and his invention as disclosed by his specifications did not require this relative size of rollers, and there was nothing in the character of the invention itself which required such a peculiarity; can it be that, by claiming it in his preferred form, he would lose the benefit of it when employed in equivalent forms? To so hold would be to deny a long-settled rule of law. Referring again to the case of Winans v. Denmead, the claim distinctly called for the form of the frustum of a cone, and this was emphasized by reciting the advantages of that form, and the court, if it had accepted the doctrine here contended for, must have held that the patentee was limited to that form, for it was the one specifically described in the claim. That case has always been recognized as authority for the doctrine it inculcates and has been cited and relied on in numerous cases. We do not doubt that where the thing described in a claim has been declared by the inventor to be the only one, or has treated it as the only one appropriate to represent his invention, or the character of the associated elements is such as necessarily to require that particular form, in all such cases the patentee will be bound by his description. But where there are no such considerations, and there is simply and only a description of one form of a thing which would perform the same office in other forms, the court will apply the general rule above stated and accord him his monopoly in all equivalent forms. In such a case the general rule prevails and there is no ground for treating the case as exceptional. The distinction and the reason for it were stated by Mr. Justice Miller in Werner v. King, 96 U. S. 218, at page 230, 24 L. Ed. 613. We think the third claim of this patent is also valid, and that it comprehends the defendants' machine.

The question of infringement is too clear to warrant further discussion. In addition to the case of Winans v. Denmead, we may venture to cite several of our own decisions where the infringement was much more obscure than in the case before us: King Ax Co. v. Hubbard, 97 Fed. 795, 38 C. C. A. 423; Bundy Mfg. Co. v. Detroit Time Reg. Co., 94 Fed. 524, 36 C. C. A. 375; McSherry Mfg. Co. v. Dowagiac Mfg. Co., 101 Fed. 716, 41 C. C. A. 627; Dowagiac Mfg. Co. v. Superior Drill Co., 115 Fed. 886, 53 C. C. A. 36.

Several minor points are made in defense. One is that the bill is multifarious in that it alleges infringement of two patents differing in their characteristics. This defense was not made by the answer nor made in or considered by the court. The only difference in the two patents consists in the fact that the invention of the patent of 1901 improved one of the elements of the combination of the earlier patent. The infringement was of both patents, by the same machine, and by the same parties. We think there could be no valid objection to the

joinder of the patents in one suit, and that it was warranted by the precedents. Walker on Patents, § 417, and cases cited.

Another point made is that it is not sufficiently proven that the defendant Wallace L. Baker participated in the infringement complained of, and that the bill of complaint as to him should be dismissed. We cannot discover that any objection was made by the defendants in the court below on this score. Still, if there is nothing at all in the record tending to show that this defendant was responsible for the infringement, the bill should be dismissed as to him. The evidence upon this point was scanty, and, if our decision rested alone upon that we should have much difficulty. But the answer hardly raises this issue. It puts the ground of defense in the allegation that the machine "which they (the defendants) may have used" was in accordance with rights secured by them under a patent to George A. Stevens, and in paragraph 8 they make the contention that the patent (of 1901) was restricted by the patentee pending his application in the Patent Office "to a machine wherein there is a revoluble feeding cylinder, and a parallel revoluble cutter-bar of much smaller diameter than the cylinder; all pursuant to the requirements of the Commissioner of Patents, and that said claims are so confined and limited that Vrooman, or his assigns cannot now seek for or obtain a construction thereof sufficiently broad to cover any constructions used by these defendants, or either of them." And, in paragraph 13, there is an implication from a negative pregnant that they in fact used the machine complained of though denying that it had the rollers of the complainants' patents. And this was the theory of the controversy as it was waged in the Circuit Court. We think the objection is not well taken on the appeal. It seems probable that the parties being engaged in the larger contest paid little attention to minor issues, which the complainants as well as the defendants overlooked. If more proof of the liability of Baker was required, it would have been competent for the complainants to have obtained leave to introduce further proof on this point. And in practice it is customary to grant it in the circumstances supposed.

Then it is contended that in the patent of 1897 there was no joint invention. The patent was for a combination, and while the evidence would justify a conclusion that one of the Vroomans only first perceived the crude form of the elements, and saw that by their adaptation and composition they might be made to accomplish a useful result, yet it only shows that one of the inventors, looking through a glass darkly, saw something of the elements which were finally composed and adapted to their places for their proper work. It would constantly be happening in the case of joint inventions that the illuminating idea was seen by one before it was seen by the other. But between that and the issuing of the patent there is in many instances a long stretch of time devoted to experiments and the consideration of the form or forms in which it may best be used. The law contemplates this and gives time for it. Without going into a detail of the evidence upon this point, we shall content ourselves with the statement that it falls far short of disproving, what the law presumes from the granting of the patent, that it was a joint invention.

The result is that the decree of the Circuit Court must be reversed,

with costs, and with directions to enter a decree for the plaintiffs granting an injunction, and an order of reference, if one be asked, for the ascertainment of profits and damages, and a further decree therefor if any are found.